IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | C.A. NO. C-11-309 |
| | § | |
| $89,980.00 UNITED STATES CURRENCY | § | |

**MEMORANDUM AND RECOMMENDATION TO
GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

This is a civil forfeiture action in rem filed by the United States pursuant to 21 U.S.C. § 881, et seq., seeking forfeiture of defendant property, $89,980.00 in United States currency. (D.E. 1). Claimant Manuel Bonilla filed an answer, claim of interest, and counterclaim. (D.E. 5; D.E. 6). Plaintiff filed a motion for summary judgment. (D.E. 16). Claimant did not file a response in opposition.[1] For the reasons stated herein, it is respectfully recommended that plaintiff's motion be granted.

### I.  JURISDICTION

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1345, 1355 because this is a forfeiture action brought by the United States.

### II.  FACTUAL ALLEGATIONS

On May 13, 2011, law enforcement officers conducted a traffic stop of a red Mazda driven by claimant on Interstate Highway 37 Southbound, just north of Corpus Christi, Texas, during which they seized defendant property, $89,980 in United States currency. (D.E. 1, at 2; D.E. 16, at 6). The money was deposited in the United States Marshals Service's seized asset deposit fund account at the Federal Reserve Bank. Id.

---

[1] Pursuant to Local Rule 7.4, failure to respond is taken as a representation of no opposition.

The events leading up to the seizure began in 2010, when the Drug Enforcement Agency identified Francisco Bacerra as a suspect involved in a drug trafficking organization operating out of Southern Texas. (D.E. 16, at 2). In 2011, the DEA began investigating Mr. Bacerra and conducting surveillance on his home in Houston, Texas, suspecting that he stored controlled substances as well as the proceeds from drug trafficking there.[2] Id. at 3. On May 12, 2011, the DEA began surveillance on an individual identified as "Viejon," who was in Houston overseeing the distribution of marijuana. Id. Agents followed Viejon as he drove the red Mazda to Mr. Bacerra's home that day. Id. They saw a blue Ford pickup truck arrive there as well. Id. Later in the afternoon, they observed Viejon, Mr. Bacerra, Omar Gutierrez, and others standing around the Mazda which was parked in the driveway. Id. The front and rear bumpers had been removed. Id. at 4. An agent watched Mr. Bacerra and Viejon work on the vehicle throughout the afternoon and into the night. Id. When the agent resumed surveillance in the morning, he noted that the bumpers had been reinstalled and that the Ford pickup truck was also parked in the driveway. Id.

At around 10:30 a.m. on May 13, 2011, the agent saw the two vehicles leave the house, with claimant driving the Mazda and Mr. Gutierrez riding in the front passenger seat. Id. at 5. The agent followed the two vehicles until they reached United States Highway 59, noting that they were traveling in tandem and maintaining a close distance to one another. Id. He then alerted DEA agents in Corpus Christi who advised him that they would try to investigate the vehicles. Id.

---

[2] After drugs were seized from his home, Mr. Bacerra was indicted on related charges. United States v. Bacerra, et al., 4:12-cr-160 (S.D. Tex. Mar. 14, 2012) (indictment).

2

Later that day, law enforcement stopped the Ford pickup truck in Kleberg County, Texas, for traffic violations. Id. After the driver consented to a search, officers discovered a bundle of money concealed in a shoe and several bundles of money concealed inside the door panels of the truck. Id. The bundles of money, which totaled $20,431, were wrapped in black electrical tape and packaged in vacuum sealed bags. Id.

That same day, officers with the Corpus Christi Police Department stopped the Mazda near Corpus Christi, Texas, for traffic violations when claimant failed to use a turning signal when switching lanes. Id. Claimant and Mr. Gutierrez consented to a search of the vehicle both orally and in writing, and the officers searched it and conducted a canine scent test. Id. The canine alerted to the odor of controlled substances inside the center console area of the vehicle. Id. In addition, the officers noticed evidence of fresh tampering with the front bumper and tooling marks on the exterior of the vehicle. Id. They moved the Mazda to a service center and then removed the rear bumper, uncovering fourteen bundles of money concealed in the frame rails of the vehicle. Id. They also discovered four bundles of money in the center console area of the dashboard where the canine had alerted. Id. Each bundle was wrapped in black electrical tape and vacuum sealed plastic, and the money totaled $89,980. Id.

On September 27, 2011, plaintiff filed a complaint for forfeiture in rem seeking a judgment of forfeiture in its favor pursuant to 21 U.S.C. § 881(a)(4), which provides for the forfeiture of all moneys furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of the Controlled Substance Act, 21 U.S.C. § 801, et seq., all proceeds traceable to such an exchange, and all moneys used or intended to be used to facilitate any violation of the Controlled Substance Act. (D.E. 1). On September 27,

2011, pursuant to Rule G(4)(6) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, plaintiff sent notice of the action and a copy of the complaint to counsel for claimant, who had filed a claim during the administrative forfeiture proceedings alleging to be the "sole owner" of the money. (D.E. 16-1, at 7-12). On November 3, 2011, plaintiff posted notice of the forfeiture on an official government website for thirty consecutive days pursuant to Rule G(4)(a)(iv)(C) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. (D.E. 3).

On December 8, 2011, claimant filed a verified claim seeking release of the money, claiming that it belonged to him and was unlawfully seized. (D.E. 5, at 1). On December 12, 2011, he filed a counterclaim pursuant to 42 U.S.C. § 1983. (D.E. 6). On September 14, 2012, plaintiff filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure Rule 56. (D.E. 16). Claimant did not file a response in opposition.

### III.  DISCUSSION

Plaintiff contends that it is entitled to summary judgment because it can show by a preponderance of evidence that there is a substantial connection between the money sought to be forfeited and a violation of the Controlled Substances Act pursuant to 21 U.S.C. § 881(a)(6). (D.E. 16, at 11).

A.	**Standard Of Review Pursuant To A Motion For Summary Judgment.**

Summary judgment is appropriate when there is no disputed issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In making this

determination, the Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.  Courts must consider the record as a whole by reviewing all pleadings, depositions, affidavits, interrogatories and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion.  Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002) (citation omitted).  The Court may not weigh the evidence or evaluate the credibility of witnesses.  Id.

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings.  Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248.  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." Caboni, 278 F.3d at 451.  "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." Anderson, 477 U.S. at 250-51.

**B.     Plaintiff Is Entitled To Summary Judgment.**

Plaintiff argues that it is entitled to summary judgment because it can show by a preponderance of evidence that there is a substantial connection between the money sought to be forfeited and a violation of the Controlled Substances Act pursuant to 21 U.S.C. § 881(a)(6).

(D.E. 16, at 11). Specifically, it argues that a substantial connection is established by: (1) evidence of concealment of the property; (2) the location from which the property was transported and the manner of transport; (3) the positive alert by a canine trained to detect the odor of narcotics; (4) the demeanor of claimant and Mr. Gutierrez during the traffic stop and their inconsistent statements to law enforcement; and (5) claimant's failure to show a legitimate source of the money. Id. at 11-26. Though claimant did not file an answer in opposition to plaintiff's motion for summary judgment, he did assert in his answer that any evidence obtained from the search should be excluded because the stop and search of the car were made without probable cause and in violation of the warrant requirement of the Fourth Amendment. (D.E. 6, at 2). In addition, he asserts a counterclaim alleging constitutional violations on the same grounds pursuant to 42 U.S.C. § 1983. Id.

Pursuant to 21 U.S.C. § 881(a)(6), the Government may obtain forfeiture of money furnished or intended to be furnished in exchange for a controlled substance, all proceeds traceable to such an exchange, and all money used or intended to be used to facilitate such an exchange. However, 18 U.S.C. § 983(c)(3) requires that it establish "a substantial connection between the property and the offense." Furthermore, it must show this connection by a preponderance of evidence.[3] 18 U.S.C. § 983(c)(1). The Government need not "trace the property to a particular drug transaction," as long as "the totality of the circumstances ... leads to a finding" of a connection. United States v. One 1987 Mercedes 560 SEL, 919 F.2d 327, 331 (5th Cir. 1990) (citing United States v. $4,255,625.39, 762 F.2d 895, 903 (11th Cir. 1985);

---

[3] Prior to the enactment of the Civil Asset Forfeiture Reform Act, the Government was required to establish only probable cause to believe that the property was subject to forfeiture. See 19 U.S.C. § 1615. For all cases commenced after August, 23, 2000, however, the Government must prove its case by a preponderance of the evidence. See 18 U.S.C. § 983(c)(1).

Illinois v. Gates, 462 U.S. 213, 244 n.13 (1983)).  Finally, the Supreme Court has held that the Fourth Amendment exclusionary rule applies in civil forfeiture cases.  One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 702 (1965).  Therefore, the existence of a substantial connection can only be established based on legally seized evidence.  See United States v. $191,910 in U.S. Currency, 16 F.3d 1051, 1064 & n.27 (9th Cir. 1994), superceded on other grounds as stated in United States v. $80,180.00 in U.S. Currency, 303 F.3d 1182, 1184 (9th Cir. 2002).

> **1.    The money seized from the vehicle was not the fruit of an illegal stop and search.**

Claimant argues as an affirmative defense and in his counterclaim that the stop and search of his vehicle was illegal pursuant to the Fourth Amendment, and therefore the evidence obtained, including the money, was the fruit of an illegal search and must be suppressed.  (D.E. 6, at 2).  Though plaintiff does not address this issue in its motion for summary judgment, the record indicates that law enforcement officers initiated the stop after claimant failed to use the vehicle's right turn signal when switching lanes.  (D.E. 16-3, at 2).  While they ran a computer check on claimant's license, the officers questioned claimant and Mr. Gutierrez about what they were doing and where they were going.  Id.  Then, after being questioned, claimant and Mr. Gutierrez both consented to a search of the vehicle.  Id. at 4.

The legality of a traffic stop is analyzed pursuant to the framework articulated by the Supreme Court in Terry v. Ohio, 392 U.S. 1 (1968).  See Knowles v. Iowa, 525 U.S. 113, 117-18 (1998); United States v. Brigham, 382 F.3d 500, 506 (5th Cir. 2004).  Pursuant to the two-part test set out by Terry, a routine traffic stop can be justified by "reasonable suspicion" if the law enforcement official's action was: (1) "justified at its inception;" and (2) "reasonably related in

scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 19-20. As the Fifth Circuit has explained, pursuant to the first prong of Terry, "[a]n officer may stop a motorist for a traffic violation even if, subjectively, the officer's true motive is to investigate unrelated criminal offenses." United States v. Lenz, 162 F. App'x 379, 382 (5th Cir. 2006) (per curiam) (unpublished) (quoting United States v. Sanchez-Pena, 336 F.3d 431, 437 (5th Cir. 2003)). As to the second prong, the scope may extend at least while law enforcement officers run relevant computer checks on the driver. See United States v. Jackson, 517 F. Supp. 2d 859, 868 (W.D. La. 2007) (explaining that "once all relevant computer checks have come back clean, there is no more reasonable suspicion, and, as a general matter, continued questioning thereafter unconstitutionally prolongs the detention.") (citing Brigham, 382 F.3d at 510); see also United States v. Jones, 234 F.3d 234, 241 (5th Cir. 2000).

 Here, the initial stop of the vehicle was justified by reasonable suspicion based on claimant's traffic violation.[4] In addition, to the extent the stop continued while the officers ran computer checks on claimant's license, the scope was reasonable. After the license check, both claimant and Mr. Gutierrez consented to a search of the vehicle. Claimant does not indicate that they were detained for a prolonged period after the computer check but before they gave their consent. See United States v. Dortch, 199 F.3d 193, 198 (5th Cir. 1999) (explaining that "[t]he Constitution was violated ... when the detention extended beyond the valid reason for the initial stop.... even after ... the computer check was completed," given that the further detainment was not consensual or reasonably related to the purpose of the traffic stop), abrogated on other grounds as recognized in United States v. Puck, 612 F.3d 341, 355 (5th Cir. 2010). Nor does he

---

[4] Texas law mandates that "An operator [of a motor vehicle] shall use [its turn signal] to indicate an intention to ... change lanes." Tex. Transp. Code § 545.104(a).

argue that his consent was not voluntarily given or an independent act of free will. See United States v. Chavez-Villarreal, 3 F.3d 124, 127 (5th Cir. 1993). In fact, he signed a consent form indicating that he was consenting to a vehicle search "of [his] own free will and accord, and without being subjected to any compulsion, threats, promises or persuasion of any kind." (D.E. 16-3, at 7). Accordingly, claimant's consent removed the traffic stop from the scope of Terry and law enforcement officers did not need reasonable suspicion to continue the search. See United States v. Sheppard, 901 F.2d 1230, 1234 (5th Cir. 1990) ("[c]onsent to search has been repeatedly recognized as sufficient to waive Fourth Amendment rights") (quoting United States v. Fike, 449 F.2d 191, 194 (5th Cir. 1971), abrogated on other grounds as recognized in United States v. Pierre, 932 F.2d 377 (5th Cir. 1991)).

Therefore, any evidence obtained as a result of the traffic stop and subsequent vehicle search–including the money discovered hidden in the bumper–was not derived from an illegal search and does not require suppression pursuant to the fruit of the poisonous tree doctrine. See United States v. Rivas, 157 F.3d 364, 368 (5th Cir. 1998) ("Under the 'fruit of the poisonous tree' doctrine, all evidence derived from the exploitation of an illegal search or seizure must be suppressed, unless the Government shows that there was a break in the chain of events sufficient to refute the inference that the evidence was a product of the Fourth Amendment violation.") (citing Brown v. Illinois, 422 U.S. 590, 602-03 (1975)). Accordingly, it is respectfully recommended that any evidence resulting from the search and seizure did not violate the Fourth Amendment and can serve as a basis for establishing a substantial connection between the money and illegal drug activity.

### 2. There is a substantial connection between the money and illegal drug activity.

Upon view of the totality of circumstances, plaintiff has established a substantial connection between the money seized from the Mazda and illegal drug activity. First, officers discovered the money concealed in the vehicle, and claimant has failed to put forth any persuasive explanation as to why. See United States v. $242,484.00, 389 F.3d 1149, 1161 (11th Cir. 2004) (en banc) (finding substantial connection when cash was discovered "sealed in a cellophane-type material" and concealed in a backpack, without any legitimate explanation as to why). Specifically, the money was concealed in elaborate packaging–it was vacuum sealed and wrapped in black electrical tape–and hidden inside the bumper of the vehicle. When asked to explain why it was there, claimant responded that he was attempting to keep it "safe and secure," despite that he did not own the car. (D.E. 16, at 14). In addition, he insists that he was not transporting the money to a physical address or to give to another person, id. at 17, suggesting, presumably, that he intended to store it there permanently. Finally, adding to the unpersuasiveness of claimant's assertions, the fact that he was carrying substantial amounts of money raises suspicions, in and of itself. See United States v. $159,880.00 in U.S. Currency, More or Less, 387 F. Supp. 2d 1000, 1013 (S.D. Iowa 2005) ("Possession of a large amount of cash is 'strong evidence' that the cash is connected with drug activity.") (quoting United States v. $84,615 in U.S. Currency, 379 F.3d 496, 501-02 (8th Cir. 2004)).

Second, the source of departure of the vehicle, the manner of transportation, and the location of travel suggest a connection with illegal drug-related activity. See, e.g., United States v. Currency, U.S. $42,500.00, 283 F.3d 977, 981 (9th Cir. 2002) (giving weight to the fact that claimant was traveling from New York to San Diego, because those are "well known source

cities for drugs"). For example, law enforcement officers observed the Mazda at a known drug-trafficker's residence the night before the incident, and saw that its bumpers were removed and reassembled before it departed with the Ford pickup truck. The vehicles traveled together to a source area for drugs and a destination for moneys used in drug trafficking, (D.E. 16, at 17), and substantial amounts of money, concealed in an identical manner, were recovered from both vehicles.

Third, a canine trained to detect narcotics alerted to the odor of controlled substances inside the Mazda, which serves as evidence supporting a substantial connection between the money and drug trafficking activities. See United States v. Three Hundred Sixty-Nine Thousand Nine Hundred Eighty Dollars ($369,980) in U.S. Currency, 214 F. App'x 432, 434 (5th Cir. 2007) (per curiam) (unpublished) (canine's positive alert during the search of the vehicle was, among other factors, sufficient evidence to support the jury's verdict forfeiting currency to the Government).

Fourth, claimant's demeanor during the traffic stop and the inconsistent statements made by him as well as Mr. Gutierrez to law enforcement officers weigh in favor of finding a substantial connection between the seized money and illegal drug activity. See $159,880.00 in U.S. Currency, More or Less, 387 F. Supp. 2d at 1015 (inconsistent and false statements regarding how much money claimants were carrying, why they were visiting a location, and where they were staying, "are relevant in determining whether the government has met its burden in justifying forfeiture."); United States v. Funds in Amount of Thirty Thousand Six Hundred Seventy Dollars, 403 F.3d 448, 463 (7th Cir. 2005) (inconsistencies were relevant in weighing whether the Government had established its burden justifying forfeiture); United States

11

v. Fuse, 391 F.3d 924, 929 (8th Cir. 2004) (extreme or unusual nervousness of the vehicle's driver and passenger throughout the stop, along with other circumstances, were sufficient to create reasonable suspicion of illegal activity sufficient to extend the traffic stop for a dog sniff search). For example, claimant appeared nervous and his hand was visibly shaking as he gave the officer his driver's license. He was breathing deeply, had a pulsating carotid artery, and would not directly face the officer when answering questions. (D.E. 16, at 20). In addition, claimant and Mr. Gutierrez gave inconsistent statements to the officers regarding the reason for their travel. For example, claimant told an officer that he was going to Harlingen, Texas to see his uncle and spend the night, but he did not know the address or even the area of Harlingen where his uncle lived. (D.E. 16, at 19). By contrast, Mr. Gutierrez told the officers that they were going to Brownsville to pick up his uncle, and that they then intended to return immediately to Houston. Id. Later, claimant asserted that he and Mr. Gutierrez were in fact going to a party. (D.E. 16-7, at 20).

Finally, the fact that claimant cannot show a legitimate source for the money provides a strong basis for finding a substantial connection between it and illegitimate activity. See Three Hundred Sixty-Nine Thousand Nine Hundred Eighty Dollars ($369,980) in U.S. Currency, 214 F. App'x at 433-34 (claimant's lack of income, among other factors, supported forfeiture because even though he had claimed to have saved money over two years from selling imported vegetables, he filed no tax returns during those years, and his 2003 tax return showed an income of only $27,918); United States v. $174,206.00 in U.S. Currency, 320 F.3d 658, 662 (6th Cir. 2003) ("evidence of legitimate income that is insufficient to explain the large amount of property seized, unrebutted by any evidence pointing to any other source of legitimate income ... satisfies

the burden imposed by the statute"). Though claimant argues that he "saved this money from working over several years," (D.E. 16, at 22), considering his age (he was twenty-one years old when the money was seized), his employment history, and his tax returns, it seems unlikely–if not impossible–that he could have saved nearly $90,000.[5] Based on his own admissions, claimant earned a total gross income from 2009 and 2010 of $36,000. Id. at 22-23. On the other hand, his tax returns show a reported income of $23,838 for those years. Id. He acknowledges having received unemployment benefits of $7,137 in 2010. Even taking into account this supplemental income, however, claimant still would not have been able to save the $89,980 that was seized from the Mazda, regardless of whether his income was $36,000 or $23,838. He acknowledges that he does not own any real property, any vehicles, and has no savings or other funds in any bank accounts. (D.E. 16, at 24). The absence of any legitimate, verifiable source for the money supports forfeiture under these circumstances.

Taking into account these all of the circumstances, including the concealment of the money; the location from which it was transported, the manner of transport, and its apparent destination; the fact that a canine alerted to the odor of narcotics in the vehicle; claimant's demeanor and his inconsistent statements; and the lack of a legitimate source for the money, it is respectfully recommended that plaintiff had established a substantial connection between the money and illegal drug activity by a preponderance of evidence. Therefore, it is respectfully recommended that it is entitled to forfeiture.

---

[5] Claimant asserts that he earned the money while working for Energy Efficient Insulation, Bonilla's Foundation, and Texas Steel Conversion, Inc. (D.E. 16-7, at 17). In 2009, he earned $3,200, $8,000, and $12,000 from those employers, respectfully. (D.E. 16-7, at 27). In 2010, he earned $12,800 from Bonilla's Foundation, which was his only source of income that year. Id. In addition, though he does not indicate that the money was saved from his employment in 2011, the employers for whom he claims to have worked have no record of his employment. (D.E. 16-1, at 18, 20).

**C.      Claimant Has Failed To State A Claim Pursuant To 42 U.S.C. § 1983.**

Claimant asserts a counterclaim pursuant to 42 U.S.C. § 1983 alleging that "[t]he illegal seizure of [his] money and its continued detention despite [his] efforts to secure its return deprived [him] of his civil rights." (D.E. 6, at 2). He seeks damages and attorney's fees, as well as reasonable interest for loss of its use in his personal affairs. Id.

First, claimant has failed to state a claim based on the allegedly illegal seizure of the money during the traffic stop because the Corpus Christi Police officers who conducted the search and seizure are not parties to this action.

Second, to the extent he asserts a distinct constitutional claim against plaintiff for the continued deprivation of the money *after* the allegedly illegal seizure, he has failed to state a claim. A claim alleging violation of federal law by federal officials must be brought against the individual officers acting in their official capacity pursuant to Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), not 42 U.S.C. § 1983. See Banks v. F.D.I.C., 374 F. App'x 532, 534-35 (5th Cir. 2010) (unpublished) (explaining that "'federal officials, acting under color of federal law, rather than state law, are not subject to suit under § 1983.'") (quoting Resident Council of Allen Parkway Village v. United States Dep't of Hous. & Urban Dev., 980 F.2d 1043, 1053 (5th Cir. 1993)) (emphasis added). Accordingly, § 1983 is not the proper cause of action through which to assert his claim because federal, as opposed to state, officials hold his money. In addition, the federal officials responsible for the continued detention of his money are not parties to this action, and plaintiff–the United States–is not a proper defendant to a Bivens claim. Finally, claimant's allegations that the continued deprivation is invalid or illegal are meritless because plaintiff is entitled to forfeiture of the

14

property. Accordingly, it is respectfully recommended that claimant's counterclaim be dismissed for failure to state a claim.

## IV. RECOMMENDATION

Accordingly, it is respectfully recommended that plaintiff's motion for summary judgment, (D.E. 16), be granted, and that claimant's counterclaim pursuant to 42 U.S.C. § 1983, (D.E. 6), be dismissed.

Respectfully submitted this 9th day of November 2012.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).